ROBERT J. GLADWIN, Judge
Diana Holland appeals the Miller County Circuit Court's order granting summary judgment to appellees Tom and Diane Cooper, finding that the lease agreement between the parties did not require that the Coopers become insurers of the property. On appeal, Holland argues that (1) Arkansas Code Annotated section 18-16-110 (Repl. 2015) requires that the Coopers *879 were liable for Holland's injury; (2) there are genuine issues of material fact in dispute; and (3) the trial court abused its discretion by not allowing Holland to amend her complaint after summary judgment was granted to the Coopers. We affirm.
I. Facts and Procedural History
Holland filed a complaint against the Coopers alleging that she entered into a lease agreement with them for a residence in Texarkana, Arkansas. She claimed that on May 5, 2015, at 10:00 p.m., she smelled smoke and decided to inspect the air-conditioning unit outside. As she walked toward the back of the property, she stepped in a hole and fell, injuring both ankles. She alleged in her complaint that the Coopers, as landlords and owners of the property, undertook responsibility for maintenance of the lawn, including all mowing, and were responsible for her injury. She acknowledged that Arkansas law provides that a landlord is not responsible for damage caused by any defect or disrepair on the premises absent his agreement to maintain or repair the leased premises and a failure to perform the agreement. Ark. Code Ann. § 18-16-110. She alleged that the Coopers had accepted responsibility for mowing and maintaining the yard and that the lease agreement contained the provision that
the agents of the landlord and any contractor or workman authorized by the landlord may enter any duplex ... for the purpose of inspecting the duplex to ascertain whether measures are necessary or desirable to make repairs ... or any other purposes.
Holland alleged that the Coopers either knew or should have known about the hole in the yard; the hole was not open and obvious; it was foreseeable that the hole could cause her to trip or fall causing injury; and the Coopers breached their duty to either use ordinary care to make the condition safe or to warn her of the danger. She alleged that due to the Coopers' negligence, she fractured her left ankle, requiring surgery, and cracked her right ankle bone. She alleged that she had permanent damage and continued to have problems standing and walking. She asked for damages for past, present, and future medical care, treatment, services, and expenses, for suffering and mental anguish, and for permanent injuries.
The Coopers answered her complaint and filed a motion for summary judgment. They alleged that they were not liable under Arkansas law. They also claimed that they had no duty by contract and had not assumed an obligation supported by consideration. The summary-judgment motion was supported with an affidavit of Diane Cooper stating that she and her husband had no knowledge prior to Holland's fall that there were problems with the ground being unlevel in the backyard of the apartments. She stated that they had a lawn service under contract to do the mowing and weed eating around the apartment and that she had told Holland that they handled the mowing of the yard. She stated in her affidavit,
I was never informed by [Holland] or any third party there was a need to make repairs to the backyard. I had no knowledge that there were any problems to the backyard prior to [Holland's] fall. I never agreed to make repairs to the premises because I had no knowledge that repairs were needed. [Holland] never paid any consideration to me or my husband for repairs. She made the monthly lease payments pursuant to our lease agreement, but there was no consideration given to me to support an agreement to make repairs to the backyard. There was never a discussion between me and [Holland] that we would *880 make repairs to the backyard. I never assumed a responsibility to make repairs to the backyard. We have never had complaints even though our grandchildren lived on the property and played in the backyard. We had no knowledge that there was any need for any work to be done on the backyard prior to [Holland's] alleged fall.
In deposition testimony, Holland said that she had told Ms. Cooper that she was unable to take care of the yard and that she asked if the Coopers took care of the yard, and Ms. Cooper said, "Yes, don't worry about it, we take care of the maintenance and the yard." She also said that the photographs of the yard that were introduced at the deposition were taken by her daughter on May 6, 2015, the day after the injury.
Holland said that when she was injured, she was talking to her sister on the phone. She said that she walked outside the front door for fresh air and there was a full moon, it was very bright out, and there was light from the windows and street. She could see the ground and the air-conditioning unit, so she walked down to the unit to smell for smoke. She smelled none, so she continued to walk toward the back of the yard to see if anyone was there smoking. When she did, she "felt air under [her] left foot and a snap and [she] was on the ground screaming." She said she had never been in the yard before that night and that she had seen someone mowing the yard at times. She said,
Even if I'd had a flashlight, I don't think I would have seen the hole because the grass was growing up so it all looked even to me. [My daughter] even had a hard time finding it in the daytime because the grass was growing up and it looked level.
She also said that she had not asked for the hole to be repaired because she had not known the hole was there. She said that she had depended on the Coopers to do anything on the grounds that needed to be done and that they should have warned her about the hole.
In the deposition testimony of Michael Pennington, he stated that he had owned Pennington Lawn Care since 1998 and had done work for the Coopers. He said that he used a commercial riding lawn mower and mowed the Coopers' rental properties every ten days. He said that several kids from church or high school worked for him, that they began to mow the property at issue in March 2015, and that they would mow, weed eat, blow, and pick up trash and limbs in the yard. He did not recall if he had done the mowing at this location, but said that he more than likely had.
At the March 2, 2017 hearing on summary judgment, Holland's attorney argued that, because there were scalp marks on one side of the hole where Holland fell, Pennington must have known about the hole, and that his knowledge, as the Coopers' agent, was imputed to the Coopers, making them liable for Holland's injury. The trial court granted summary judgment to the Coopers at the conclusion of the hearing, and the order was filed on March 14, 2017.
On March 3, 2017, Holland filed an amended complaint, adding to her prayer for damages that she sought medical benefits from Shelter Insurance, the Coopers' insurance carrier on the property. She alleged that the benefits were "no fault" and payable to a person injured on the property, but Shelter had not paid. The trial court would not consider her amended complaint, stating in a March 13, 2017 email, "It is not appropriate to amend pleadings after a final decision in a case is made. This case is concluded except for *881 appeal." Holland filed a notice of appeal on April 12, 2017, and this appeal followed.
II. Standard of Review and Applicable Law
On appeal, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. Moody v. Tarvin , 2016 Ark. App. 169, 486 S.W.3d 242. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. Summary judgment should be granted only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. Id. Once a moving party has established prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Id.
Arkansas Code Annotated section 18-16-110 provides as follows:
No landlord or agent or employee of a landlord shall be liable to a tenant or a tenant's licensee or invitee for death, personal injury, or property damage proximately caused by any defect or disrepair on the premises absent the landlord's:
(1) Agreement supported by consideration or assumption by conduct of a duty to undertake an obligation to maintain or repair the leased premises; and
(2) Failure to perform the agreement or assumed duty in a reasonable manner.
The Arkansas Supreme Court held that a landlord had no duty to remove hazards from common areas in the absence of an assumption of that duty in a lease in Wheeler v. Phillips Development Corp. , 329 Ark. 354, 947 S.W.2d 380 (1997). Therein, the supreme court stated as follows:
A tenant is not an invitee on her landlord's premises but has a right equal to that of the landlord to exclusive possession of the property. Glasgow v. Century Property Fund XIX , 299 Ark. 221, 772 S.W.2d 312 (1989). Since 1969, when we decided Kilbury v. McConnell , 246 Ark. 528, 438 S.W.2d 692 (1969), we have adhered to what is known as the Massachusetts rule; that is, that a landlord has no duty to a tenant to remove hazards from common areas unless such terms are spelled out in the lease. Id. ; see also Bartley v. Sweetser , 319 Ark. 117, 890 S.W.2d 250 (1994). When there is no evidence of an agreement or assumption of duty that removes a landlord from the general rule, we will sustain a grant of summary judgment for the landlord. Hall v. Rental Management, Inc. , 323 Ark. 143, 913 S.W.2d 293 (1996). Further, the question of whether a duty is owed is always a question of law and never one for the jury. 65th Center, Inc. v. Copeland , 308 Ark. 456, 825 S.W.2d 574 (1992).
Id. at 356-57, 947 S.W.2d at 382.
This court recently held that whether landlords assumed by their conduct the duty to maintain or repair precluded a grant of summary judgment to them in Hurd v. Hurt , 2017 Ark. App. 228, 519 S.W.3d 710. In doing so, we stated,
Arkansas has recognized the common-law doctrine of caveat lessee for almost a century, and under that rule, unless a landlord agrees with his tenant to repair leased premises, he cannot, in the absence of statute, be compelled to do so or be held liable for repairs. Propst v. McNeill , 326 Ark. 623, 624, 932 S.W.2d 766, 767 (1996) ; see also *882 Majewski v. Cantrell , 293 Ark. 360, 362, 737 S.W.2d 649, 651 (1987) (stating that a lessor under common law owes no duty of repair of the premises to the lessee but that a landlord who agrees to such repairs can be held liable for them).
Id. at 4, 519 S.W.3d at 712. We now examine Holland's arguments considering the applicable law.
III. Arkansas Code Annotated Section 18-16-110
Holland contends that the parties had a written lease agreement and an oral agreement that the Coopers would maintain the yard; thus, she argues that the provisions of the statute are met, making the Coopers liable for her injuries. She points to the lease-agreement language allowing for the landlord or his agent to inspect the property to ascertain whether measures were necessary or desirable to make repairs, and she claims that Pennington was the Coopers' agent. She argues that, under the lease, she may advise the landlord of a needed repair; however, she claims that the landlord clearly reserved the right to inspect so as to make needed repairs.
She cites Huber Rental Properties, LLC v. Allen , 2012 Ark. App. 642, at 8, 425 S.W.3d 18, 22, in which this court found that the lessor was required to repair the premises based on the lease, which stated,
Maintenance: Please make request for repairs or maintenance to Lessor between 8 a.m. and 5 p.m. Monday through Friday.... In the event of an emergency, please contact the Lessor as soon as possible. No charge is made for maintenance and repairs unless caused by negligence or abuse by the tenant, other residents, or guests.
The Allens had presented testimony to the trial court that Huber had promised to have the carpets cleaned and that Huber's maintenance man looked at the sink and agreed that it needed to be fixed and said that he would talk to Huber about getting it fixed. Id. , 2012 Ark. App. 642, at 4, 425 S.W.3d at 20. Later, a large tree limb fell across the driveway, and the Allens were promised that Huber would have it removed. Id. When the repairs were not performed, the Allens withheld their rent payment, but instead of addressing the issues, Huber served an eviction notice on them. Id. at 4-5, 425 S.W.3d at 21. We affirmed the trial court's order in favor of the Allens stating, "Because the contract contained an agreement on the part of the landlord to repair the leased premises ... the trial court correctly concluded that Huber's conduct constituted a material breach of the lease." Id. , 2012 Ark. App. 642, at 8, 425 S.W.3d at 23.
Holland argues that the lease agreement herein requests that the tenant report damage or loss of any kind to the landlord, and the tenant is responsible for the costs of repair if the tenant's neglect or misuse caused the damage. She maintains that, as in Huber , it was clearly intended that the Coopers would pay for the cost of the repairs unless Holland had caused the damage.
Holland contends that the parties had an oral agreement that the Coopers would maintain the yard. She cites Hurst v. Feild , 281 Ark. 106, 661 S.W.2d 393 (1983), in which the Arkansas Supreme Court held that a genuine issue of material fact existed with respect to whether terms of an oral sublease imposed upon the sublessor a duty to repair, precluding summary judgment. Holland argues that the Coopers assumed the duty to maintain the yard by their conduct, which was to hire an agent to mow the yard. She argues that section 18-16-110 includes an oral agreement where the landlord undertakes an obligation to maintain or repair the leased premises. She contends that a general *883 statement regarding maintenance satisfies the statute, i.e., there is no requirement that the landlord agree to repair or maintain a certain condition or item. She claims that when the Coopers said that they would maintain the yard, it was enough to put the question to a jury to determine what the maintenance would entail.
She cites Lloyd v. Pier West Property Owners Assoc. , 2015 Ark. App. 487, 470 S.W.3d 293, where this court stated that the association undertook the duty to maintain the common areas, and undertaking of this duty triggered factual questions about whether the property owners' association exercised reasonable care to perform that duty. Holland argues that, while there was no promise to repair a hole in the yard, a jury could decide that holes in the yard could be included within maintenance. She argues that summary judgment should not be granted when reasonable minds could differ as to the conclusions that can be drawn from the facts presented. Id.
We hold that the Coopers had no duty under the statute to make repairs to the ground. Unless a landlord agrees with his tenant to repair the leased premises, he cannot, in the absence of statute, be held liable for repairs. See E.E. Terry, Inc. v. Cities of Helena and W. Helena , 256 Ark. 226, 506 S.W.2d 573 (1974). First, the Coopers owed no duty to Holland under any contract theory. Holland never raised an issue to the Coopers of problems with the yard. Neither the Coopers, Holland, nor the lawn service reported any issues with uneven ground, and there was no evidence that the Coopers were aware of the uneven ground. Further, there was no evidence that the Coopers contracted with Holland to make repairs on the premises, notwithstanding Holland's reference to the lease agreement, which stated:
The agents of the landlord and any contractor or workman authorized by the landlord may enter any duplex at any reasonable hour of the day for the purpose of inspecting such duplex to ascertain whether measures are necessary or desirable to make repairs.
This language reserves in the landlord a right to inspect the property. The Coopers did not contract with Holland or the lawn-care service to make any repairs. Therefore, Arkansas law does not impose on the Coopers a duty under the contract.
Second, the Coopers owed no duty to Holland by assumption of an obligation. Holland argues that, because the Coopers assumed the duty to "maintain" the yard, a material question of fact was created regarding whether maintenance included repairing the hole that caused her injury. The Coopers claim that Holland's request for yard maintenance due to her health and their acknowledgement of a service already being rendered does not constitute notice of a problem to be remedied as stated in the lease. Further, they contend that it does not constitute an agreement nor was it supported by consideration to do so. We agree.
The lawn services were for mowing the grass. Holland argued that neither she nor a reasonable person could have known of the uneven ground. The evidence supported that the Coopers were also unaware of the uneven ground. The Coopers employed a lawn care service to mow the grass because Holland was unable to do so herself. They made no promises of repairs to the yard nor did Pennington make promises to repair the yard. There was not an oral agreement to make repairs, a contract to make repairs, or a duty of an assumption of an obligation. Accordingly, no material questions of fact remained, and summary judgment was appropriate.
*884 IV. Whether There Are Genuine Issues of Material Fact
Holland argues in a separate point that there are genuine issues of material fact in dispute and that the jury should have decided whether the Coopers had notice of a dangerous condition, breached the duty to maintain the yard, and failed to repair the condition or warn her of a hidden danger. However, because we have affirmed that the Coopers owed no duty to Holland, either under contract or by an assumption of duty, and determined that the agreement to maintain the yard did not impose on the Coopers a duty to repair, Holland's arguments have either been addressed or rendered moot. Because the trial court correctly found that the Coopers had no duty to repair, Pennington's knowledge of the hole becomes irrelevant.
V. Amending the Complaint
We will not reverse a trial court's decision allowing or denying amendments to pleadings absent a manifest abuse of discretion. Peterson v. Davis , 2012 Ark. App. 166, at 5, 2012 WL 559935. A party who opposes an amendment has the burden of challenging it on one of two grounds: "prejudice" to the objecting party or "undue delay" of the trial. Ark. R. Civ. P. 15(a) (2017). The test used to determine whether an amendment is prejudicial is whether the party opposing the amendment will have a fair opportunity to defend after the amendment. Travis v. Houk , 307 Ark. 84, 817 S.W.2d 207 (1991).
Holland argues that the trial court abused its discretion by not allowing her to amend the complaint after the hearing on summary judgment. She argues that immediately following the hearing, she contacted the attorney for the Coopers to obtain the benefits under their homeowner's insurance. When the Coopers' attorney indicated that the benefits might be denied, Holland filed an amended complaint before entry of the order on summary judgment. However, the trial court found that it was too late to amend the complaint.
Holland cites Arkansas Rule of Civil Procedure 15, which addresses amendments to pleadings, and contends that the trial court did not leave the case open for the parties to resolve the amended claim for medical-payment benefits. She argues that the trial court disallowed the amendment but made no finding that prejudice or that resolution of the issue would unduly delay the proceedings under Rule 15. Peterson , supra. She claims that it is reversible error for a trial court to strike an amended pleading without a finding of prejudice or undue delay. Ultracuts Ltd. v. Wal-Mart Stores, Inc. , 343 Ark. 224, 33 S.W.3d 128 (2000). Holland argues that Arkansas courts allow complaints to be amended while motions, including motions for summary judgment, are pending. Mullen v. Shockley , 2009 Ark. App. 855, 2009 WL 4851953 (the trial court abused its discretion by striking the amended complaint when the plaintiff filed his amended complaint after the trial court ruled from the bench on a summary-judgment motion, but before the summary-judgment order was filed for record, which was required to make the judgment final).
However, no new claims were made in Holland's amended complaint; therefore, the trial court did not abuse its discretion by dismissing the amended complaint. As in Beckworth v. Diamante, Private Membership Golf Club, LLC , 2010 Ark. App. 814, 379 S.W.3d 752, the present case is distinguished from Mullen , supra , in which a new claim was asserted after the court heard a motion for summary judgment, but before the order was filed. As the Coopers contend, Holland's amendment sought to add an additional source of *885 recourse for damages, not an additional claim. Because summary judgment had been granted, concluding that the Coopers owed no duty toward Holland, Holland's request for damages based on a violation of that duty is precluded.
Affirmed.
Whiteaker and Brown, JJ., agree.