Cite as 2020 Ark. App. 119

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV-18-903

| | |
|---|---|
| JANA HANSHEW AND CLINT HANSHEW, INDIVIDUALLY; AND CLINT HANSHEW AS GUARDIAN OF THE ESTATE OF ALYSSA HANSHEW, A MINOR<br><br>APPELLANTS<br><br>V.<br><br>ARTURO MARTINEZ AND MELISSA MARTINEZ<br><br>APPELLEES | **OPINION DELIVERED:** FEBRUARY 19, 2020<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-17-943]<br><br>HONORABLE DOUG SCHRANTZ, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Jana Hanshew and her husband, Clint Hanshew, individually and as guardian of his daughter's estate (collectively "Hanshews"), appeal the Benton County Circuit Court's order granting summary judgment to appellees, Arturo Martinez and Melissa Martinez. On appeal, the Hanshews argue that the Martinezes owed a duty of reasonable care to those attending their Halloween party. Alternatively, the Hanshews contend that a question of fact remains. We affirm.

## I. *Facts*

The Hanshews' daughter, Alyssa, age fifteen, attended a Halloween party at the Martinezes' home on October 29, 2016. Alyssa had not received an invitation but was invited by a classmate, and she was dropped off at the party by her friend's parent. Alyssa's younger sister also attended the party, and she was dropped off by Clint Hanshew. At the

party, hayrides were being conducted by Mark Griffin, Melissa Martinez's ex-husband. Griffin drove a truck with a large flatbed trailer hitched to the back. The trailer was filled with hay, and Griffin pulled the trailer down the street and onto a vacant lot where he would turn around and return to the Martinez home. Alyssa received permission from Griffin to get off the hayride and scare the riders by jumping out from bushes when the hayride passed. While walking beside the hayride, Alyssa's foot was run over by the trailer. The Martinezes drove Alyssa to meet her parents in a store parking lot, and she was taken to Northwest Physicians Specialty Hospital where x-rays revealed that her right foot was broken in numerous places. Alyssa continues to walk with a limp despite having had foot surgery on October 31 and undergoing months of physical therapy.

The Hanshews filed a negligence complaint against the Martinezes alleging that they breached their duty of care by failing to provide supervision for the hayride, which resulted in Alyssa suffering a catastrophic foot injury. The complaint sought $1.5 million in damages for Alyssa's injury and $97,581.41 for medical expenses. In their second amended answer, the Martinezes affirmatively pled that Griffin, the hayride driver, and Jennifer Krein, a cohost of the party, were nonparties who proximately caused Alyssa's injuries.

The Martinezes moved for summary judgment alleging they owed no duty to the Hanshews because (1) Alyssa was never invited to the party; (2) the Hanshews never verbally requested that Alyssa be supervised by the Martinezes; and (3) the Martinezes never verbally acknowledged or agreed to accept responsibility for doing so. Attached to the summary-judgment motion were transcripts from the depositions of the Martinezes, the Hanshews (including Alyssa and her younger sister, Devyn), Griffin, and Krein.

The Hanshews responded to the motion and claimed that the Martinezes, as hosts, owed a duty of ordinary care to Alyssa and the other children attending and participating in the activities at the party. They also alleged that as property owners, the Martinezes owed Alyssa the duty of care owed to a licensee. The party invitation was attached to the pleading as an exhibit along with answers to interrogatories and text messages produced in response to requests for production.

The parties made their respective arguments at a hearing before the circuit court on July 16, 2018, and the motion for summary judgment was granted. The order filed August 3 states in part:

> 3. In regard to Plaintiffs establishing a duty for their negligent supervision claim in this matter, Arkansas law requires Plaintiffs to communicate their request that Defendants supervise Plaintiffs' minor daughter, and Defendants must communicate an acknowledged acceptance or responsibility for same. *Bradley v. Welch*, 94 Ark. App. 171, 228 S.W.3d 559 (2006).

> 4. The Court finds that the undisputed facts in the case at bar fall within the purview of *Bradley v. Welch*, *supra*. Furthermore, the Court finds that the undisputed facts in this matter show Defendants never accepted responsibility to supervise Plaintiffs' minor daughter. As a result, Defendants did not owe a duty to Plaintiffs.

> 5. Because Plaintiffs cannot prove Defendants owed a duty to Plaintiffs that was breached, Plaintiffs cannot establish negligence. This results in no material facts being in dispute and, therefore, Defendants are entitled to Judgment as a matter of law.

The Hanshews appeal from the order.

## II. *Standard of Review and Applicable Law*

Duty is a concept that arises out of the recognition that the relationship between individuals may impose on one a legal obligation for the other. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, at 4, 470 S.W.3d 293, 297. What duty is owed by one person

3

to another is always a question of law and never one for the jury. *Id.* (citing *Kowalski v. Rose Drugs of Dardanelle, Inc.*, 2011 Ark. 44, 378 S.W.3d 109; *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003)).

> Summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635. Because the underlying cause of action is based in negligence, the existence of a duty of care is crucial. Under Arkansas law, to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Id.* Because the question of what duty is owed is one of law, we review it de novo. *Id.* If the court finds that no duty of care is owed, the negligence count is decided as a matter of law. *Id.*

*Bennett v. Graves & Assocs., Inc.*, 2019 Ark. App. 99, at 3, 571 S.W.3d 528, 530.

No cases were cited by the parties or found by this court that directly address the issue presented—whether hosts of a children's party owe a duty of ordinary care to the children attending without specific entrustment and acceptance of responsibility for their supervision. There are two Arkansas negligent-supervision cases on which the parties rely: *Bradley v. Welch*, *supra*, and *Anderson v. Mitts*, 87 Ark. App. 19, 185 S.W.3d 154 (2004).

In *Mitts*, this court held that an aunt had a duty of ordinary care when supervising her thirteen-month-old nephew after she had received permission from his mother to take the child to her house. 87 Ark. App. at 21–22, 185 S.W.3d at 155–56. While at the aunt's house, the child's hand was severely burned by a space heater. *Id.* The circuit court directed a verdict in favor of the aunt by finding that the child was a licensee and that the duty of care owed by the aunt was not to injure him through wanton or willful conduct. *Id.* at 23, 185 S.W.3d at 156. We reversed and remanded, holding that the appropriate standard of

4

care was the duty to exercise ordinary care to avoid injury to the child. *Id*. at 23, 185 S.W.3d at 156–57. We stated,

> [The aunt] undertook the responsibility of caring for the thirteen-month-old child. She picked up the child from his house, where he was under the care of his mother, and took him to her own house. In doing so, she assumed a responsibility that went above and beyond any duty that might arise merely by virtue of the child's status upon the premises. As explained in the Alabama case, the location of any breach of that higher duty does not affect its analysis.

*Id*. at 25, 185 S.W.3d at 158 (discussing *Standifer v. Pate*, 282 So.2d 261 (Ala. 1973), wherein the Alabama Supreme Court held that the place at which supervision occurred should not affect the duty owed the plaintiff).

In *Bradley*, *supra*, this court affirmed the circuit court's summary judgment in a negligence claim brought by an injured child's mother and grandmother. Eight-year-old D.B. was invited to a swimming party hosted by parents and coaches involved in D.B.'s baseball league. *Bradley*, 94 Ark. App. at 173, 228 S.W.3d at 560. D.B.'s grandmother took him, along with his three-year-old brother, to the party. *Id*. While the grandmother was talking with the three-year-old, D.B. got into the water, and after he and another boy could not be located, both boys were found at the bottom of the pool. *Id*. at 174, 228 S.W.3d at 561. D.B. was brought to the surface by a coach and revived. *Id*. When the mother and grandmother brought a negligence claim against the coaches, parents, baseball league, and swimming club, they claimed that D.B. had been entrusted to the care, custody, and control of the named defendants and that the defendants had been negligent in their supervision of D.B. *Id*.

On appeal from the summary judgment that was granted to the defendants in *Bradley*, we affirmed and held,

5

In *Mitts*, we quoted a passage from Dan B. Dobbs, *The Law of Torts* § 236 (2001), to the effect that a landowner owes a duty of reasonable care if he has been entrusted with and accepted responsibility for supervising the child. This envisions an actual transference of supervisory responsibility from the parent to another person. In the case at bar, unlike the situation in *Mitts*, there was no conscious and deliberate shifting of responsibility from the parent to the purported caretaker; rather, the evidence, even when viewed most favorably to appellants, showed that Mrs. Bradley unilaterally and without communicating her intention, claimed to have turned over responsibility for her child. Further, there is no genuine issue of material fact regarding whether appellees accepted from Mrs. Bradley the responsibility for supervising [D.B.]. While appellees may have planned the party and engaged in the ordinary, instinctual supervision that most adults undertake when they are around children, there is no showing that appellees took over supervision from Mrs. Bradley. We therefore decline to bring this case within our holding in *Mitts*.

*Id*. at 180, 228 S.W.3d at 565. With this law in mind, we turn to the case before us.

### III. *Analysis*

The Hanshews argue that even though the question of whether a duty exists is a question of law, the question is "driven by the facts." They rely on *Mitts*, *supra*, for the proposition that one who is entrusted with the care of a child and accepts that entrustment owes the child a duty of reasonable care to provide supervision. They argue that the circuit court's finding—children's parents must communicate their request for supervision of their child to the adult, and the adult must communicate and acknowledge acceptance for responsibility for same—is incorrect.

The Hanshews contend that *Bradley*, which by the circuit court relied on, is distinguishable from the instant case in that the grandmother remained at the pool party with her grandson. Here, the Hanshew parents did not remain at the party. In *Mitts*, the child's mother entrusted his care to the child's aunt, and the mother did not accompany the child to the aunt's house. Likewise, the Hanshews contend that they entrusted their child's care to the Martinezes. The Hanshews complain that by the circuit court's analysis, without

6

a formal exchange of supervision from one parent to another, no one is charged with supervising children at an event.[1]

We hold that the circuit court did not err in determining that *Bradley* requires a conscious and deliberate shifting of responsibility from the parent to the purported caretaker. The Hanshews urge that a question of fact informing duty exists. They argue that the standard for determining whether an adult assumed a duty of reasonable care to supervise a child as it is constructed in *Mitts* lends itself to fact-finding: whether the child's parents entrusted the child to another adult, and whether that other adult accepted the entrustment. Here, the Hanshews contend that the jury could conclude that they entrusted Alyssa to the Martinezes and that the Martinezes accepted that entrustment.

We hold that the question of what duty is owed is one of law. *Lloyd*, *supra*. The Hanshews' argument—that by virtue of hosting a party, the hosts owe an ordinary duty of care to children in attendance—is not directly addressed by caselaw. It is undisputed that there was not a conscious and deliberate shift of responsibility from the Hanshews to the

---

[1]The Hanshews also rely on cases outside our jurisdiction: *Walker v. Garris*, 368 So.2d 277, 279–80 (Ala. 1979) (Alabama Supreme Court holding that although adult was under no obligation to hold a hayride for group of children, once he undertook that enterprise he was under a duty to conduct hayride properly by providing a suitable conveyance for hayride and by controlling and supervising children so as to protect them from injury); *Standifer v. Pate*, *supra* (Alabama Supreme Court held that allegations that babysitter undertook to supervise and care for baby and that as result of babysitter's negligence baby was injured stated a cause of action); and *Clontz v. St. Mark's Evangelical Lutheran Church*, 578 S.E.2d 654 (N.C. Ct. App. 2003) (injured festival assistant's negligence claim against church, in which assistant claimed church supervisors failed to exercise reasonable care in supervision of children in hayride during holiday festival, was not subject to motion to dismiss for failure to state a claim upon which relief could be granted, where complaint, taken as true, alleged welfare of children on hayride had been entrusted to the supervisors appointed by church for purposes of safely operating hayride).

Martinezes.  Further, it is undisputed that the Martinezes did not recognize or accept responsibility from the Hanshews.  Accordingly, the circuit court properly determined as a matter of law that no duty existed to form the basis of a negligence claim.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Mulkey Law Firm*, by: *Bruce L. Mulkey*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Wright, Lindsey & Jennings LLP*, by: *Nicholas D. Hornung*, for appellees.