Cite as 2020 Ark. App. 420

# ARKANSAS COURT OF APPEALS
DIVISIONS IV & I
**No.** CV-19-737

| | | |
|---|---|---|
| ANNA SHERRILL | | **Opinion Delivered:** September 23, 2020 |
| | APPELLANT | |
| V. | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CV-18-1273] |
| RIKA PROPERTIES, LLC | | |
| | APPELLEE | HONORABLE LYNN WILLIAMS, JUDGE |
| | | REVERSED AND REMANDED |

**BART F. VIRDEN, Judge**

Anna Sherrill appeals the Garland County Circuit Court decision to dismiss her claim against Rika Properties, LLC ("Rika"). We reverse and remand.

I. *Relevant Facts*

On December 28, 2016, after lunch at the Brickhouse Grill located inside the building owned by Rika, as Sherrill exited the building via the ramp located on the side of the building, she fell and injured her shoulder. The ramp area has a roof, but it is open to the elements. The day Sherrill fell and injured her shoulder the weather was misty, and it had rained the day before. Sherrill stated that she had visited the Brickhouse Grill many times over the past two decades and had never fallen on the ramp or noticed any dangerous condition of the ramp. Sherrill filed a complaint against the building owner for negligence, alleging the following. On the day of the accident, Sherrill was an invitee, and Rika owed a duty of ordinary care to protect her from known dangers or dangers that Rika, with

reasonable care, might discover. Sherrill was exercising ordinary caution and care (holding on to the handrail and walking slowly) when she fell on the ramp, which was in a defective and hazardous condition not apparent to her but known to Rika. Specifically, the ramp is at an extreme slope, and the surface covering the ramp is made of smooth PVC material that captures dirt, debris, and moisture and is not appropriate for ramps. This material caused the ramp to be particularly slippery. Rika was aware of the ramp's defective condition and that the ramp was unfit for its intended purpose, and Rika was aware that the ramp had caused many other people to fall before Sherrill's injury. Rika did not exercise proper care after learning of the ramp's defects by failing to adequately warn of the unsafe condition, cure the known defect, take steps to make the ramp safe by installing slip-resistant materials on the surface, and adhere to any of the local, state, or federal codes regarding the ramp's safety.

Rika filed a motion for summary judgment, asserting that there were no issues of material fact in dispute and that it was entitled to judgment as a matter of law. Rika argued that there was no foreign substance on the ramp, the ramp is not defective, and that Sherrill had traversed the ramp many times and was familiar with the ramp. Moreover, it was obvious the ramp was wet from rain, and Sherrill had other routes to the parking lot available to her.

In her response to Rika's motion, Sherrill asserted that reasonable minds could form differing opinions regarding the dangerous and defective condition of the ramp and whether the dangerous condition of the ramp was open and obvious. Sherrill offered the opinion of

a licensed professional engineer, Justin Hall, who performed a hazard study on the ramp and concluded that the ramp was unreasonably dangerous due to the extreme slope and the improper surface material covering it. Hall stated that the condition of the ramp violates multiple local, state, and federal regulations, and the defects are not obvious to the untrained eye. Hall opined that the smooth PVC material captures dirt, debris, and moisture and that the surface is dangerous wet or dry.

Sherrill included the deposition testimony of the manager of the Brickhouse Grill who stated that he personally witnessed at least twenty people fall on the defective ramp, the ramp is the only place where people regularly fall, and he notified Rika of the falls. An employee at another restaurant located in the building stated that she had seen at least four people fall on the ramp and that she, too, had notified Rika of the falls.

Sherrill also clarified that she never claimed, as stated by Rika, that rain caused the defective condition of the ramp—it had not rained that day, and damp conditions alone were not the cause of her fall. Sherrill explained that the extreme slope of the ramp, the surface material of the ramp, and the poor condition of the surface material caused her fall and that these dangers were not open and obvious. She had never heard of anyone falling on the ramp, she had no idea the ramp was dangerous before she fell, and there was no visible indication that the ramp was defective. Moreover, Sherrill claimed that Richard Karuhn, Rika's owner, testified that it would be unreasonable to expect Sherrill to have been aware of the ramp's defects. The circuit court granted summary judgment, finding that there are no issues of material fact in dispute. This appeal follows.

## II. *Standard of Review and Applicable Law*

In reviewing summary-judgment cases, our court need only decide if the circuit court's decision to grant summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Moses v. Bridgeman*, 355 Ark. 460, 139 S.W.3d 503 (2003). The moving party always bears the burden of sustaining a motion for summary judgment. *Id*. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id*. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id*. Once the moving party makes a prima facie showing that it is entitled to summary judgment, the opponent must meet proof with proof by showing a material issue of fact. *Id*. However, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence. *Id*. We have further stated that summary judgment should not be granted when reasonable minds could differ as to the conclusions that can be drawn from the facts presented. *Id*. The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Johnson v. De Kros*, 2014 Ark. App. 254, 435 S.W.3d 19.

The duty of care that Rika owes to its invitees is stated as follows in Restatement (Second) of Torts § 343 (Am. Law Inst. 1965):

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The basis for a premises owner's liability under this rule is the superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. *Van DeVeer v. RTJ*, 81 Ark. App. 379, 101 S.W.3d 881 (2003). No such duty exists, however, if the condition of the premises that creates the danger was known by, or obvious to, the invitee unless the premises owner should reasonably anticipate that the invitee would be exposed to the danger despite his knowledge of it or its obvious nature. *Id.* Whether a duty is owed is always a question of law and never one of fact for the jury. *Jordan v. Jerry D. Sweetser, Inc.*, 64 Ark. App. 58, 977 S.W.2d 244 (1998). The parties agreed that Sherrill was an invitee; thus, the question of law, i.e., the duty owed her, is not in dispute.

Here, Sherrill contends that summary judgment is inappropriate because there are material questions of fact susceptible to differing interpretations regarding her knowledge of the dangerous condition of the ramp and whether the condition is obvious. "Known" in this context means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, at 6, 536 S.W.3d 635, 639. "Thus the condition or activity must

5

not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id*. A dangerous condition is "obvious" when both the condition and the risk are apparent to, and would be recognized by, a reasonable man in the position of the visitor exercising ordinary perception, intelligence, and judgment. *Id*.

## III. *Discussion*

Summary judgment is improper in light of the factual questions regarding the ramp's dangerous condition and whether it is open and obvious. A recent case, *Dollar General Corp. v. Elder*, 2020 Ark. 208, 600 S.W.3d 597, mandates reversal.

In *Dollar General*, business invitee Karen Elder slipped and fell on the wet concrete sidewalk near the entrance to the Dollar General store, which caused her serious injury. The case went to trial, and at the close of Elder's case, Dollar General moved for a directed verdict, arguing that Elder did not introduce substantial evidence that the concrete was unreasonably dangerous or improperly maintained. The circuit court denied the motion, and Dollar General appealed the denial of its directed verdict. In pertinent part, Dollar General argued on appeal that Elder failed to prove that the sidewalk she slipped on was unreasonably dangerous and that Elder did not prove that the landlords failed to maintain the sidewalk outside the store or failed to keep the premises in compliance with the Americans with Disabilities Act. It is important to keep in mind that just as it is improper to grant summary judgment when a reasonable minds could come to different conclusions, a motion for directed verdict should be denied when there is a conflict in the evidence or

6

when the evidence is such that fair-minded people might reach a different conclusion. *See Nat'l Bank of Ark. v. River Crossing Partners, LLC*, 2011 Ark. 475, 385 S.W.3d 754.

Our supreme court upheld the circuit court's denial of the directed verdict and recounted the evidence presented at trial as follows. There was no dispute that Elder was an invitee. There was testimony the concrete's texture was not uniform, one side being smooth concrete and the other rougher concrete. Elder's safety expert testified that the smoother area of the concrete created the potential for an accident and a slip-resistant mat or coating would have reduced the risk. There was testimony that other people had slipped there and that the managers of the store were aware of the situation. On the day of Elder's fall, the usual precautions—placing a mat and a cart at the entrance—had not been taken; thus, our supreme court held, substantial evidence supported the contention that a dangerous condition existed, and Dollar General was aware of the condition.

In the instant case, it is undisputed that Sherrill was an invitee. Sherrill presented deposition testimony that the surface of the walking area presented a dangerous condition, the dangerous condition was not apparent, there were ways the surface could have been made safer. Witnesses stated that they had seen other people fall on the ramp over several years, and Rika was aware of the falls. Clearly, *Dollar General* applies here.

Rika argues that a similar fact pattern occurred in *Jenkins v. Hestand's Grocery*, 320 Ark. 485, 898 S.W.2d 30 (1995), in which a customer fell on a wheelchair ramp, and our supreme court affirmed summary judgment in favor of the grocery store, holding that there was no evidence to show the ramp presented a dangerous or unreasonable risk to invitees.

Again, the more recently decided *Dollar General* case is closer to the facts at issue here. Moreover, in *Dollar General*, the supreme court rejected Dollar General's comparison of that case to *Jenkins*. In *Jenkins*, the appellant fell leaving the store as she was walking on a "very slight slope which looked like there was no incline because the asphalt had been 'brought right up to the sidewalk.'" *Id.* at 486, 898 S.W.2d at 30. The store had never received a complaint about the area where Jenkins fell. Thousands of customers had walked on the wheelchair ramp, and there had never been any similar incident. No expert testified that a dangerous condition existed, and the circuit court found there was no evidence presented to show that the condition alleged to have caused the fall constituted a danger or that it presented an unreasonable risk, and there was no evidence presented that Hestand's knew that the ramp was dangerous or presented any risk to its invitees.

In rejecting Dollar General's comparison to *Jenkins*, our supreme court held that

> [t]his reliance is misplaced. In *Jenkins*, the plaintiff alleged that she slipped in the middle of an incline that had been built to aid carts and wheelchairs in negotiating the curb between the store and the parking lot. Evidence before the circuit court revealed that the condition had existed for twenty-nine years and that the store had served between 3,000 and 4,000 customers per year without incident. The circuit court granted summary judgment in favor of the grocery store. The court concluded that Jenkins had presented no evidence that the condition was dangerous or an unreasonable risk and that there was no evidence that the store owners were aware that the ramp constituted an unreasonable risk to its invitees. *Jenkins*, 320 Ark. 485, 898 S.W.2d 30. In contrast, here, Elder presented evidence that multiple people had slipped on the smooth concrete and that both Dollar General and the Landlords had been notified of the danger. Likewise, although Jennings performed a visual evaluation of the concrete as part of his investigation, an expert's trained eye that is looking with 20/20 hindsight for dangerous conditions cannot be equated to a customer who casually enters a store and may be less concerned with evaluating the surface characteristics of the concrete walkway than with avoiding a collision with other customers entering or leaving the store. Further, Rodney Fagan testified that he had seen the concrete and that it did not look slippery to him. Finally, Elder

8

testified that she had entered the store multiple times before and had never noticed the differences in the concrete's texture. Viewing the evidence in the most favorable light to Elder, as we must, we conclude that substantial evidence supports the jury's verdict and affirm on this point.

*Dollar General*, 2020 Ark. 208, at 9–10, 600 S.W.3d at 603–04.

The supreme court held that this testimony provided substantial evidence that the concrete presented an unreasonably dangerous condition and that Dollar General was aware of the condition.

The same analysis applies here. Unlike *Jenkins* and similar to *Dollar General*, there is evidence that Rika was aware of previous falls on the ramp, there was evidence presented regarding the dangerous surface of the ramp and its nonregulation slope, and there was evidence that a different surface could have been more slip resistant. Importantly, there was testimony that the dangerous condition of the ramp was not open and obvious.

Our standard of review requires that the court view the evidence in the light most favorable to Sherrill. In light of this standard and our supreme court's holding in *Dollar General*, we reverse the circuit court's grant of summary judgment and remand for further proceedings.

Reversed and remanded.

WHITEAKER, HIXSON, and MURPHY, JJ., agree.

HARRISON and BROWN, JJ., dissent.

**WAYMOND M. BROWN, Judge, dissenting**. I disagree with the majority's decision to reverse and remand the circuit court's order. The facts support the circuit court's grant of summary judgment to appellee Rika Properties.

9

On December 28, 2016, after leaving the Brickhouse Grill[1] in Hot Springs, appellant slipped and fell on the ramp outside the restaurant and broke her shoulder. The weather was damp and misty at the time of appellant's injury and it had rained the day before. Appellant filed a complaint against both Rika and Deja, Inc. (d/b/a Brickhouse Grill) on August 14, 2018, alleging that it was their negligence that led to her fall and the subsequent need to have her left shoulder replaced as a result of her injury. She alleged that she was an invitee at the time of her injury, and as such, Rika and Deja owed her a duty to use ordinary care to keep the premises in a reasonably safe condition. She also argued that Rika and Deja were negligent per se because the ramp in question was in violation of local and state laws and regulations. Appellant sought monetary damages for past and future pain and suffering; past and future medical bills; emotional distress; scarring and disfigurement; and any other damages allowed by law. Rika answered the complaint on September 11, 2018, denying it was negligent and stating that appellant's own negligence and failure to use ordinary care caused her injury. Deja also answered on September 11, denying negligence and contending that appellant was negligent at the time of her fall.

Appellant served Rika and Deja with requests for admissions on March 15, 2019. Rika submitted its response on March 26. In the response, Rika admitted that it was solely responsible for the maintenance of the ramp at the time of appellant's fall. However, it

---

[1]Brickhouse Grill is a tenant in a commercial building owned by Rika at 801 Central Avenue (also known as Spencer's Corner).

denied being in violation of any codes or regulations. It further denied that the elevator located on the property was inoperable. Rika subsequently filed a motion for summary judgment and brief in support of its motion on May 24. It attached excerpts from appellant's deposition testimony to support its motion. In the testimony, appellant stated that over the years, she had been on the ramp at least fifty times and that she never had a problem with the ramp prior to her fall. She also stated that she never heard about anyone else falling on the ramp prior to December 2016. She testified that on the day in question, she was wearing flat boots with rubber soles that came below her knees. She stated that she walked up the ramp on her way to lunch with no problems. She admitted that it was misty at the time of her fall and that the ramp was uncovered. She said that she immediately put her right hand on the right-hand side of the rail when she reached the ramp and took maybe three steps before her "feet went up in the air." She contended that Rika failed to fix the ramp when it should have and that the ramp had been "in that same condition for years." She stated that there was a problem with ramp because it was wet, and that it was unsafe because she slipped and fell on it. Thus, she concluded that Rika failed to keep the ramp safe as was its duty. She opined that the ramp was "slick as glass" and slick enough to make her fall. She also said that she "walked down a set of wet stairs and . . . didn't fall[,]" solidifying her conclusion that Rika was responsible for her fall.

Appellant filed a motion to voluntarily nonsuit Deja without prejudice on June 4. The court granted the motion in an order filed on June 10.[2]

Appellant filed a response to Rika's summary-judgment motion on June 17. She contended that the ramp was defective and that it "improperly functions as a walkway connecting the upper floor where Brickhouse Grill is located to the lower floor below where other restaurants and businesses are located, as well as where the exit and the building's only parking lot are located." She maintained that the ramp's surface material was so slippery and its slope was so steep that she fell despite her best efforts to be careful and protect herself. She further contended that the ramp was "the only practical and the most convenient means by which an invitee who parks in the Rika parking lot can get to the Brickhouse Grill. In order to get from the building's only parking to the Brickhouse Grill, customers typically use this ramp." She asked the court to deny Rika's motion as material issues of genuine fact remained. She included the affidavit of Justin Hall, P.E., and excerpts from several depositions to support her request. In his June 12, 2019 affidavit, Hall stated that he was a professional engineer and had visited the site of appellant's injury on May 5, 2018, to perform an inspection of the ramp. He said that he prepared a hazard study and subsequently concluded:

> The ramp on which Anna Sherrill fell is in violation of ADA Standards for Accessible Design, Arkansas Fire Prevention Code, Volumes I or II, 2007 Edition, OSHA Regulations and applicable ICC Building Code. The ramp slope and surface

---

[2]This does not seem to create a finality issue because more than a year has passed since the court granted the motion, and there is no indication that appellant refiled her complaint against Deja.

12

material are in violation of the minimum requirements within those standards. This ramp is unsafe due to these deficiencies. Because of these violations, this ramp is defective and hazardous. These defects are not something that would be obvious to the untrained eye.

The ramp had a 12% slope where only 8% is allowed by code and regulations. This is a violation of identical codes found in the ADA, AFPC, ICC, and OSHA. This violation makes this ramp defective and unnecessarily hazardous.

This defect is not something that would be known or obvious to the average person using the ramp.

The surface of the ramp is also in violation of ICC Building Codes and Arkansas Fire Prevention Codes, which require that the surface of ramps such as this one be made of slip-resistant materials that are securely attached, and that the surface be designed so that water will not accumulate. The surface of this ramp is made of semi-smooth PVC material which captures dirt and debris. It also accumulates moisture. This surface is not only dangerous when wet, but also dangerous when dry. These violations make this ramp defective and unnecessarily hazardous.

This defect is not something that would be known or obvious to the average person using the ramp.

In the excepts from appellant's deposition, appellant stated that she did not have anything in her hands when she fell and that she did not see a foreign substance on the ramp or on her boots at the time of her fall. She said that she was paying attention to where she was going because she did not want to fall on her knees since she had previously had a knee replacement. She testified that she is "more careful" following the knee replacement. She denied that her knees buckled or had anything to do with her fall. She said that prior to falling, she had no idea the ramp was dangerous. She stated that Rika could have made the ramp safer by paying attention to the history of several falls there.

Stephanie Warman, an employee of Picante's,[3] stated in her deposition that she had seen about four other people fall on the ramp over the years when it was rainy, cold, or wet. She said that she was sure that someone notified Rika about the falls although she did not personally make the notifications.

Richard J. Karuhn, the owner of Rika, stated that as the property owner, it was his duty to keep the property safe and to warn people of any unsafe conditions that he was aware of. He said that there had been one slip on the ramp in November 2013, and there was a written report placed in the files. He testified that in twenty-three years, the 2013 incident was the only slip on the ramp he was aware of and that in that incident, the lady had on cowboy boots and fell on her behind. He stated that he heard about appellant's incident in a letter sent to him by her attorney. He testified that he relied on Hot Springs Code and Enforcement agents to inform him if he is in violation of any codes since they are constantly at the building and on the ramp. He said that he did not know the code requirements for the ramp and that the ramp had not been altered in the twenty-three years he had owned the property. He stated that to the best of his knowledge, the ramp had been there since 1978. He denied having knowledge about the code requirements for a ramp's surface material. He said that he did not have any facts to suggest that Hall's conclusions or findings were wrong. He testified that he had no knowledge that the ramp was dangerous prior to appellant's fall. He agreed that if he had no knowledge of the dangerous nature of

_____

[3]Another restaurant located in the commercial building owned by Rika located at 801 Central Avenue.

14

the ramp due to the slope and surface material, appellant would not have knowledge of it either.

In the deposition of Scott Cates, manager of Brickhouse Grill, he stated that he had witnessed one or two people fall every year on the ramp since 1998. He said that he informed maintenance about what he saw when he remembered to. He subsequently stated that he had witnessed at least twenty people fall on the ramp in question.

Merrilyn Mann, appellant's sister, testified that December 28, 2016, was the first time appellant had ever slipped and/or fallen on the ramp. She stated that they would take the ramp because it was closer to the parking lot. She said that there was only one parking lot for the building and that otherwise, someone would have to park on the street. She testified that if someone decided not to take the ramp, they would have to walk "all the way around the court on flat surface." She admitted that the elevator was another option but that she did not like to use it.

Rika filed a reply to appellant's response on June 24, 2019, contending that it was entitled to summary judgment. An order was filed on July 1, granting Rika's motion for summary judgment. Appellant filed a timely notice of appeal on July 9. This appeal followed.

It is well settled that summary judgment should be granted only when it is clear there are no issues of material fact to be litigated, and the party is entitled to judgment as a matter

of law.[4]  Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact.[5]  On appeal, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and inferences against the moving party, we determine if summary judgment was appropriate by assessing whether the moving party's evidence in support of its motion leaves a material question of fact unanswered.[6]  Our appellate review is not limited to the pleadings, as we also focus on affidavits and other documents filed by the parties.[7]

In Arkansas, a property owner has a duty to exercise ordinary care to maintain the premises in a reasonably safe condition for the benefit of invitees.[8]  An invitee is one who visits "for a purpose connected with the business dealings of the owner."[9]  The basis of a defendant's liability under this rule is superior knowledge of an unreasonable risk of harm

---

[4]Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Hopkins, 2018 Ark. App. 174, 545 S.W.3d 257.

[5]*Id.*

[6]*Holman v. Flores*, 2018 Ark. App. 298, 551 S.W.3d 1.

[7]*Id.*

[8]*Dye v. Wal-Mart Stores, Inc.*, 300 Ark. 197, 777 S.W.2d 861 (1989).

[9]*Young v. Paxton*, 316 Ark. 655, 660, 873 S.W.2d 546, 549 (1994).

of which an invitee, in the exercise of ordinary care, does not know or should not know.[10] An owner's duty to warn an invitee of a dangerous condition applies only to defects or conditions such as hidden dangers, traps, snares, pitfalls and the like, in that they are known to the owner but not to the invitee and would not be observed by the latter in the exercise of ordinary care.[11] An Arkansas landowner generally does not owe a duty to an invitee if a danger is known or obvious.[12] The obvious-danger rule, however, does not bar recovery when the invitee is forced, as a practical matter, to encounter the obvious danger in order to perform his or her job.[13]

A slip and fall by an invitee on an owner's premises does not in itself give rise to an inference of negligence as a matter of law.[14] Negligence is not imposed in the absence of proof; and conjecture and speculation, however plausible, cannot be permitted to supply the place of proof.[15] To prevail on a claim of negligence, the plaintiff must prove that the

---

[10]*Jenkins v. Hestand's Grocery, Inc.*, 320 Ark. 485, 898 S.W.2d 30 (1995).

[11]*Ethyl Corp. v. Johnson*, 345 Ark. 476, 49 S.W.3d 644 (2001).

[12]*Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344 (1974).

[13]*Jenkins v. Int'l Paper Co.*, 318 Ark. 663, 887 S.W.2d 300 (1994).

[14]*Black v. Wal-Mart Stores, Inc.*, 316 Ark. 418, 872 S.W.2d 56 (1994).

[15]*Sammons v. SEECO, Inc.*, 2012 Ark. App. 650, 425 S.W.3d 38.

defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries.[16]

Appellant relies on *Dollar General Corporation v. Elder*[17] to support her proposition that the court erred by granting Rika summary judgment against her. In *Elder*, appellee Karen Elder slipped and fell on wet concrete outside the entrance to Dollar General while running inside on a rainy day. Elder reported the fall that day and received medical treatment the next day. She subsequently underwent neck, back, and shoulder surgery. She filed a complaint nearly three years later on June 7, 2013, and an amended complaint in August 2014. She claimed that she was injured during the fall; that she was a business invitee; that Dollar General had a duty to use reasonable care in maintaining its business premises; that Dollar General knew or should have known that the rain was causing the concrete at the outside entrance to become dangerously and unexpectedly slippery; and that if Dollar General had used reasonable care to either post appropriate signs warning of the slippery concrete and/or ensure that mats were in place outside the entrance, her injury would not have occurred. She claimed that she was permanently disabled because of the fall and that she had sustained and will continue to sustain pain, medical expenses, permanent impairment, scars and disfigurement, and loss of earnings. Dollar General answered and denied liability.

---

[16] *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, 536 S.W.3d 635.

[17] 2020 Ark. 208, 600 S.W.3d 597.

A jury trial took place from July 24 to July 27, 2017. Elder elicited testimony that Dollar General was aware of the dangerous conditions caused by the wet concrete and that the landlord, Rodney Fagan, said that it would be "taken care of." She also elicited expert testimony that one side of the exterior concrete had a rough finish, and the other side had a smoother finish. Dollar General unsuccessfully moved for a directed verdict, arguing that Elder failed to prove that the concrete was unreasonably dangerous or improperly maintained. The jury returned a verdict in Elder's favor for $700,000. It was reduced to $630,000 because Elder was found to be 10 percent at fault. The court entered judgment on the verdict on August 8, 2017. Dollar General filed a motion for JNOV or for a new trial, which was subsequently deemed denied. Dollar General appealed, and this court affirmed.[18] Our supreme court granted Dollar General's petition for review and entered an opinion on May 28, 2020, affirming the lower court's order. On the issue of negligence, our supreme court held that the concrete created an unreasonably dangerous condition due to the concrete's not being uniform; that Dollar General was aware of the dangerous condition; and that it was not an obvious danger based on Elder's testimony that she had been to the store numerous times and had not noticed the difference in the concrete's surface and on Fagan's testimony that the concrete did not look slippery to him.

This case is distinguishable. Even viewing the evidence in the light most favorable to appellant, summary judgment was appropriate. Assuming that the ramp was defective or

---

[18]*Dollar Gen. Corp. v. Elder*, 2019 Ark. App. 526, 589 S.W.3d 437.

dangerous at the time of the appellant's fall, it was an obvious danger. Appellant had been on the ramp at least fifty times over the years, so she knew the condition of the ramp even if she did not know the slope measurements or know that the surface material posed a risk. An outside ramp affected by the elements—in this case, rain the day before and misting at the time of the fall—is not an unreasonably dangerous condition. Any risk of harm by slipping and falling on a wet ramp should have been known or obvious to appellant. That Rika may have been informed about others who had slipped on the ramp over the years is of no consequence under the facts of this case.

The forced-encounter argument appellant makes is not applicable in this situation. Evidence shows that there were other means available for appellant to reach her destination without using the ramp. Appellant chose to use the ramp because it was habit and because it was convenient. Additionally, this exception has been used only in the context of performing a job. Appellant was not at work but was simply leaving a restaurant the same way she came when she fell.

I respectfully dissent.

HARRISON, J., joins.

*Green & Gillespie*, by: *Joshua D. Gillespie*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Laser Law Firm*, by: *Kevin Staten* and *Brian A. Brown*, for appellee.