Cite as 2024 Ark. App. 321

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-23-146

| | | |
|---|---|---|
| EVELYN JACKSON | | Opinion Delivered  May 15, 2024 |
| | APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCV-19-221] |
| V. | | |
| MISSISSIPPI COUNTY HOSPITAL SYSTEM D/B/A GREAT RIVER MEDICAL CENTER, AND MAGMUTUAL INSURANCE COMPANY | | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | | REVERSED AND REMANDED |
| | APPELLEES | |

**WENDY SCHOLTENS WOOD, Judge**

Evelyn Jackson appeals the Mississippi County Circuit Court's order granting summary judgment to Mississippi County Hospital System d/b/a Great River Medical Center (the Hospital) and dismissing her complaint for negligence. We reverse and remand because the circuit court erred in granting summary judgment.

On September 26, 2016, while at the Hospital for a medical procedure, Jackson was injured when she slipped and fell in some water as she exited the elevator. She sued the Hospital for negligence, alleging that it failed to properly inspect its premises; properly maintain its premises in a safe condition; make its premises safe for patrons; and warn its patrons of dangerous conditions on the premises.

The Hospital moved for summary judgment, contending that it did not breach any duty of care to Jackson. Specifically, the Hospital stated that Jackson fell on a wet floor when she exited the elevator and that a "wet floor sign was up" when she fell. The Hospital attached a "Confidential Report of Event/Occurrence to Hospital Attorney," signed and dated by its employee Joyce Pharo immediately after Jackson's fall, and three documents detailing Jackson's attendance and treatment at the Hospital's emergency room on the day of and the day after her fall. The Hospital argued that Jackson failed to present any proof of how long the water had been on the floor or that the water's presence was the result of its negligence. The Hospital also claimed that the wet floor was "open and obvious" and marked by a wet-floor sign when Jackson fell.

Jackson responded, arguing that the Hospital's motion was not supported by documents allowed by Rule 56 of the Arkansas Rules of Civil Procedure because none of the four exhibits attached to the Hospital's motion were under oath, and all constituted hearsay. She asked the court to strike the four exhibits. She also attached her own deposition to her response, in which she testified that she had slipped in a "big puddle of water" that "drenched" her "from head to toe." She said she was not looking in the direction of the puddle when she fell and did not see it until afterward. She said that several Hospital employees attempted to help her up, and one told her that they had asked the "maintenance guy" several times to get the water off the floor. She admitted, however, that she did not know who the employees were and had no contact information for them. When asked if she knew how the water had gotten on the floor, she said that the "building leaks." She knew

this because someone told her and because she had seen "plastic and stuff in the top of the ceiling, where it was leaking" with buckets on the floor when she had been in the building before. She said it was not raining on the day that she fell. She also said she did not see any warning signs near the puddle. When asked if she would disagree with hospital records stating that there was a sign by the puddle, she testified, "I did not see it and it didn't – it wasn't there." She argued that her unrefuted testimony that she slipped in a large puddle of water when she exited the elevator and that she did not see any warning signs creates a question of fact, and she asked the court to deny the Hospital's motion.

The Hospital filed a reply to Jackson's response. First, the Hospital claimed that the four exhibits Jackson asked the court to strike were records of regularly conducted business activity and statements of medical diagnosis or treatment and therefore excluded from the hearsay rule.[1] The Hospital attached the affidavit of Ashley Herrington, the risk manager for the Hospital, in which Herrington stated that exhibit A, Pharo's report of the incident, was a report of an event prepared on the day of the fall and that it was the regular practice of the Hospital to complete these reports when injuries occur at the Hospital. She also stated that the other three exhibits—Jackson's medical records—were kept in the course of a regularly conducted business activity and were made for the purpose of medical diagnosis or treatment.

---

[1]Ark. R. Evid. 803(4), (6) (2023).

Second, the Hospital argued that Jackson did not have firsthand knowledge of how the water got on the floor, a wet-floor sign was posted at the time she fell, and Jackson may not rely on inadmissible hearsay statements from unidentified hospital employees regarding the existence of the puddle. The Hospital argued that Jackson could not show that the presence of the water on the floor was the result of the Hospital's negligence, how the water got on the floor, or how long it had been there. Finally, the Hospital argued that a landowner does not owe a duty to a business invitee if a danger is known or obvious and that its report of the event documented that there were towels and a wet-floor sign by the water when Jackson fell, making the danger known or obvious.

The circuit court held a hearing on the motion on June 13, 2022, and extended the discovery deadline ninety days. During the ninety-day extension, Jackson deposed Pharo, and the Hospital filed a supplemental reply attaching Pharo's deposition.

Pharo testified that she had been the staffing director for the nurses and was at the nurses' station near the elevator at the time of Jackson's fall. She said someone waved her over to Jackson after the fall. When asked what caused Jackson to fall, Pharo replied,

> There was water on the floor. No—there was tile—there was a leak in the ceiling. It had been raining. The ceiling tiles were leaking. We had towels on the floor. We also had a wet floor sign. And that's what I'm assuming made her fall.

Pharo did not know how long the towels had been on the floor "because it was a—it was a steady leak from the ceiling." When asked whether this area leaked every time it rained, Pharo said that some areas did leak, and she was not sure if this area had leaked before. She

4

also was not sure if it had rained on the day of the fall or the day before. She said that she contacted the risk-management department after the fall. According to Pharo,

> [W]e got someone to come and make sure the towels were up and make sure the mop—we mopped up—there was water on the floor, it was mopped up. Put a container there to keep the water in to contain the leak.

On October 10, the circuit court held another hearing during which it denied Jackson's motion to strike the Hospital's four exhibits attached to Herrington's affidavit and granted the Hospital's motion for summary judgment. The court stated that Jackson failed to establish there was a recurring leak where she fell. The court then specifically found that the Pharo's testimony coupled with the record Pharo submitted at the time of the incident "established that there were towels and a warning sign in the area before Jackson fell." The court noted that it had "encountered such warning signs in use by other property owners." Finally, the court concluded that Jackson failed to present evidence demonstrating that the Hospital breached its duty of ordinary care to her. On appeal, Jackson challenges both the circuit court's denial of her motion to strike the Hospital's exhibits and its grant of the Hospital's motion for summary judgment.

We first address Jackson's argument that the court erred when it failed to strike the Hospital's four exhibits attached to Herrington's affidavit: a report of the event signed and dated by Pharo immediately after Jackson's fall and three documents detailing Jackson's attendance and treatment at the Hospital's emergency room on the day of and the day after the incident. On appeal, Jackson relies on cases holding that hearsay that is not admissible at trial may not be considered in a summary-judgment analysis. She also argues that the

5

exhibits attached to the Hospital's original motion for summary judgment "were not properly supported or verified and were outside of the requirements of Rule 56."

The Hospital argues that, although the exhibits were initially filed without an affidavit, its reply remedied the hearsay objection, which included the sworn testimony of Herrington, the risk manager for the Hospital, stating that Pharo's report of the incident was a report of an event prepared on the day of the fall and that it was the regular practice of the Hospital to complete these reports when injuries occur at the Hospital. Herrington also stated that the other three exhibits—Jackson's medical records—were kept in the course of a regularly conducted business activity and were made for the purpose of medical diagnosis or treatment. When it submitted the reply with Herrington's affidavit, the Hospital argued that the documents are exceptions to hearsay under the medical-diagnosis-or-treatment and business-records exceptions. *See* Ark. R. Evid. 803(4), (6). The court's denial of Jackson's motion suggests it agreed.

In an affidavit, a court may consider hearsay evidence that may be subject to a hearsay exception. *Holt Bonding Co. v. First Fed. Bank of Ark.*, 82 Ark. App. 8, 13, 110 S.W.3d 298, 302 (2003). Jackson does not respond to the argument that the affidavit established a foundation for excepting the documents from hearsay. She simply argues that the Hospital should not have been able to submit an affidavit authenticating the documents and excepting them from hearsay. She cites no authority for this argument, and the law is otherwise. Arkansas Rule of Civil Procedure 56 allows the moving party to serve "a reply and supporting materials" within fourteen days after the response. Ark. R. Civ. P. 56(c)(1). Here, the Hospital

6

filed its reply two days after Jackson filed the response. Therefore, we reject Jackson's argument regarding the court's denial of her motion to strike the exhibits.

For her second point on appeal, Jackson challenges the circuit court's entry of summary judgment. Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Tillman v. Raytheon Co.*, 2013 Ark. 474, at 6, 430 S.W.3d 698, 703. The moving party always bears the burden of sustaining a motion for summary judgment. *Sherrill v. Rika Props., LLC*, 2020 Ark. App. 420, at 4–5. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. *Id.* On appellate review, we determine if summary judgment was appropriate on the basis of whether the evidentiary items presented by the moving party in support of the motion leave a material question of fact unanswered. *Id.* Summary judgment is not proper when the evidence reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Shook v. Love's Travel Stops & Country Stores, Inc.*, 2017 Ark. App. 666, at 3, 536 S.W.3d 635, 637. We have further stated that summary judgment should not be granted when reasonable minds could differ as to the conclusions that can be drawn from the facts presented. *Sherill*, 2020 Ark. App. 420, at 4. The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Id.* at 5.

In order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the

breach was the proximate cause of the plaintiff's injuries. *Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, at 16, 386 S.W.3d 439, 449. Because the question of what duty is owed is one of law, we review it de novo. *Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, at 4, 470 S.W.3d 293, 297.

The parties do not dispute that Jackson was an invitee. A property owner owes a duty to an invitee to use ordinary care to maintain the premises in a reasonably safe condition. *Van DeVeer v. RTJ, Inc.*, 81 Ark. App. 379, 385, 101 S.W.3d 881, 884 (2003). To prevail in a slip-and-fall case, one must show either (1) that the presence of a foreign substance on the premises was the result of the owner's negligence or (2) that the foreign substance had been on the premises for such a length of time that the owner knew or reasonably should have known of its presence and failed to use ordinary care to remove it. *Cowan v. Ellison Enters., Inc.*, 93 Ark. App. 135, 143, 217 S.W.3d 175, 180 (2005). If the slippery condition is not the result of an isolated incident but instead, a recurring one, the question is simply whether the business owner used ordinary care to keep his premises free from dangerous conditions likely to cause injury to invitees. *Id.* at 144, 217 S.W.3d at 180. The duty to warn an invitee of a dangerous condition applies only to defects or conditions that are in the nature of hidden dangers, traps, snares, pitfalls and the like, in that they are known to the invitor but not known to the invitee and would not be observed by the latter in the exercise of ordinary care. *Shook*, 2017 Ark. App. 666, at 3–4, 536 S.W.3d at 637–38.

However, a property owner generally owes no duty to a business invitee if the condition of the premises that creates the danger was known by or obvious to the invitee.

8

*Van DeVeer*, 81 Ark. App. at 384, 101 S.W.3d at 884. This is also sometimes referred to as the "open-and-obvious exception" or the "obvious-danger rule." *See Duran v. Sw. Ark. Elec. Coop. Corp.*, 2018 Ark. 33, at 10, 537 S.W.3d 722, 728; *Robinson v. Quail Rivers Props., LLC*, 2022 Ark. App. 409, at 5, 654 S.W.3d 690, 693. "Known" in this context means "not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves." *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 884. "Thus, the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.*, 101 S.W.3d at 885. A dangerous condition is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.*, 101 S.W.3d at 885 (quoting Restatement (Second) of Torts § 343 (1965)).

The circuit court's order of summary judgment was based, in part, on its conclusion that towels and a warning sign were near the puddle of water that caused Jackson to slip and fall. To reach this conclusion, the court had to make a credibility finding as to Jackson's testimony that she did not see any signs near the puddle and her specific disagreement with the incident report stating otherwise: "I did not see it and it didn't – it wasn't there." No photographs or video of the area where Jackson fell were in evidence showing whether there were signs posted. Moreover, assuming that there were towels and a sign, Jackson testified that she did not see them. The Hospital had a duty to warn Jackson of hidden dangers known to it but not known to her that would not have been observed by her in the exercise of

ordinary care. A dangerous condition is "obvious" when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Van DeVeer*, 81 Ark. App. at 386, 101 S.W.3d at 885. Although the Hospital argues that any dangerous condition was "obvious" because of the sign it had posted, whether it did is disputed on this record.

Summary judgment is not proper where it is necessary to weigh the credibility of statements to resolve these issues. *Wade v. Bartley*, 2020 Ark. App. 136, at 9, 596 S.W.3d 555, 561. We must view the evidence in the light most favorable to Jackson at this stage, resolving all doubts and inferences against the Hospital. On the record before us, fact questions remain about whether the alleged danger was open and obvious or if the Hospital properly warned Jackson of a condition known to it but not—in the exercise of ordinary perception, intelligence, and judgment—known to her. *Shook*, 2017 Ark. App. 666, at 4, 536 S.W.3d at 638.

The circuit court also found that Jackson failed to "establish" that there was a recurring leak where she fell. However, Jackson testified that she slipped in a "big puddle of water" that "drenched" her "from head to toe." The Hospital presented no evidence to suggest what caused this puddle of water. The only theory was that it came from a leak in the ceiling. Jackson said that "the building leaks." She knew this because someone told her *and because* she had seen "plastic and stuff in the top of the ceiling, where it was leaking" with buckets on the floor when she had been in the building before the incident. Pharo also testified about a leak and said there was "a steady leak from the ceiling" in the area where

Jackson fell. When asked whether this area leaked every time it rained, Pharo said that some areas did leak, and she was not sure if this area was one of them.

The combined testimony of Jackson and Pharo creates a question of fact on the issue of whether there was a recurring leak in the area where Jackson fell. Therefore, viewing this evidence in the light most favorable to Jackson, we hold that the circuit court's finding that there was not a recurring leak in the ceiling in the area where Jackson fell is premature. Accordingly, we reverse and remand.

Reversed and remanded.

ABRAMSON and GRUBER, JJ., agree.

*Don R. Etherly*, for appellant.

*Spicer Rudstrom, PLLC*, by: *Cameron Watson*; and *Edd L. Peyton*, pro hac vice, for appellees.